IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DEREK KRAMER,**

      **Plaintiff,**

      v.

      Civil Action 2:21-cv-5501
      Judge Sarah D. Morrison
      Magistrate Judge Jolson

**AMERICAN ELECTRIC POWER
EXECUTIVE SEVERANCE PLAN, et al.**
      **Defendants.**

**OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion for Discovery. (Doc. 19). For the following reasons, the Motion is **GRANTED IN PART AND DENIED IN PART**. The parties are **ORDERED** to meet and confer and submit a proposed scheduling order within seven days of this Order.

**I.    BACKGROUND**

Plaintiff is a former employee of Defendant American Electric Power Service Corporation ("AEP"). (Doc. 1, ¶ 1). Plaintiff was hired by AEP in 2018 to serve as the Chief Digital Officer of AEP Charge, which he claims was "a separate and independent business unit designed to promote innovation . . . ." (*Id.*, ¶ 7). In this role, he was offered an opportunity to participate in Defendant American Electric Power Executive Severance Plan ("the Plan"), which he accepted. (*Id.*, ¶ 15–16; Doc. 4, ¶ 15–16). Plaintiff was later terminated (Doc. 1, ¶ 22; Doc. 4, ¶ 22), and was denied severance benefits under the Plan (Doc. 1, ¶¶ 27–30; Doc. 4, ¶ 27–30).

The Plan is governed by the Employee Retirement Income Security Act of 1974 (ERISA). (Doc. 1, ¶ 2; Doc. 4, ¶ 2). Plaintiff brings a claim for severance benefits under ERISA Section

502, 29 U.S.C. § 1132.  (Doc. 1, ¶¶ 31–35).  He also brings a claim for interference with protected rights under ERISA Section 510, 29 U.S.C. § 1140.  (*Id.*, ¶¶ 36–43).

The Court held a pretrial conference on March 9, 2022.  (Doc. 16).  At that conference, the parties disagreed as to whether discovery beyond the administrative record ought to be permitted.  (Doc. 18 at 2).  The parties have briefed the issue (Docs. 19, 21, 23), and the Motion is ripe for consideration.

**II.     STANDARD**

In ERISA actions, discovery beyond the administrative record typically is not permitted.  *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir. 1998) (Gilman, J., concurring).  "This rule serves 'a primary goal of ERISA . . . to provide a method for workers and beneficiaries to resolve disputes over benefits inexpensively and expeditiously,' *Perry v. Simplicity Eng'g. Div. of Lukens Gen. Indus.*, 900 F.2d 963, 967 (6th Cir. 1990), 'and any routine consideration of evidence outside that presented to plan administrators would undermine Congress's intent.'"  *Davis v. Hartford Life & Accident Ins. Co.*, No. 3:14-cv-00507, 2015 WL 7571905 at *3 (W.D. Ky. Nov. 24, 2015) (quoting *Thornton v. W. & S. Life Ins. Co. Flexible Benefits Plan*, No. 3:08CV-00648-M, 2010 WL 411119, *1 (W.D. Ky. Jan. 28, 2010)).  An exception is made, however, when evidence outside the record is offered to allege "a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part."  *See Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x 459, 466 (6th Cir. 2009) (internal quotation marks omitted) (quoting *Wilkins*, 150 F.3d at 619 (Gilman, J., concurring)).

Bias may be demonstrated when the plan administrator is operating under a conflict of interest.  In 2008, the Supreme Court held that "when a plan administrator both evaluates claims for benefits and pays benefits claims," there is a *per se* conflict of interest.  *Metro. Life Ins. Co. v.*

2

*Glenn*, 554 U.S. 105, 112 (2008). In *Glenn*'s aftermath, however, the Supreme Court and the Sixth Circuit have provided little guidance on what a claimant must allege to open the discovery doors where there is a *per se* conflict, and district courts within the Sixth Circuit have split. Some have found that the mere presence of an administer/payor conflict is enough to allow discovery. *See, e.g.*, *Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 510 (W.D. Ky. 2010). Others have set the bar higher, requiring a claimant to make a sufficient factual showing of bias before expanding discovery beyond the administrative record. *See, e.g.*, *Donovan v. Hartford Life & Acc. Ins. Co.*, No. 1:10-2627-PAG, 2011 WL 1344252, at *2 (N.D. Ohio Apr. 8, 2011). Here, however, the Court need not pick a side because it concludes that under either approach, Plaintiff is entitled to the discovery he seeks.

### III.   DISCUSSION

Plaintiff advances three arguments to open discovery beyond the administrative record. With respect to his Section 502 benefits claim, Plaintiff argues that the Supreme Court's recent opinion in *United States v. Tsarnaev*, 142 S. Ct. 1024 (2022) expressly abrogates the standard set forth in *Wilkins*. (Doc. 19 at 2–5). Plaintiff further argues that even if *Tsarnaev* did not abrogate *Wilkins*, Defendants' decision to deny benefits demonstrates sufficient "procedural irregularity" to satisfy the *Wilkins* standard and permit further discovery. (*Id.* at 5–7). Finally, Plaintiff argues that he should be permitted discovery for his Section 510 interference claim. (*Id.* at 7–8). The Court addresses each in turn.

#### A. Abrogation

Plaintiff first argues that the recent decision in *Tsarnaev* abrogates *Wilkins*. He says the principle set forth in *Wilkins*—that discovery should generally not be permitted in ERISA cases except to resolve claims of lack of due process or bias—is a "prescriptive standard" that conflicts

3

with the general provisions governing discovery set forth in Federal Rule of Civil Procedure 26. (Doc. 23 at 2–4). According to Plaintiff, *Wilkins* restricts the Court in its application of the Federal Rules of Civil Procedure, and this is a "supervisory authority" exercised by the Sixth Circuit that "disregard[s] the considered limitations of the law it is charged with enforcing." *Tsarnaev*, 142 S. Ct. at 1035–36 (internal quotation marks omitted) (quoting *United States v. Payner*, 447 U.S. 727, 735 (1980)).

Briefly, the Court notes that *Tsarnaev* is distinguishable from *Wilkins*. In *Tsarnaev*, the Supreme Court took issue with the First Circuit "circumvent[ing] a well-established standard of review" by holding a district court to "specific lines of questioning" during *voir dire*. *Id.* Failure to implement the specific lines of questioning amounted to legal error in the First Circuit, thereby limiting a district court's "broad discretion" over this aspect of the trial. *Id.* While Plaintiff correctly identifies that courts in the Sixth Circuit "ha[ve] consistently followed the *Wilkins* rule," (Doc. 19 at 3), it does not follow that permitting discovery beyond the administrative record amounts to legal error in the Sixth Circuit. In fact, the Sixth Circuit has avoided "the creation of special procedural or evidentiary rules" such as "impos[ing] a threshold evidentiary showing of bias as a prerequisite to discovery under *Wilkins*[.]" In other words, district courts still exercise discretion when determining whether to permit additional discovery in ERISA cases.

Put simply, the Court is not convinced by Plaintiff's abrogation argument. But because the Court finds that Plaintiff should be permitted additional discovery under *Wilkins*, it need not consider the argument in detail.

### B. Procedural Irregularity

Plaintiff argues that he can demonstrate enough "procedural irregularity" to support additional discovery. (Doc. 19 at 5–7). Defendants instead suggest that the denial of severance

4

occurred under "relatively ordinary circumstances," and Plaintiff has only made "mere allegations" of bias. Upon the record before it, the Court finds that AEP's dual role as administrator/payor gives rise to a *per se* conflict of interest. And to the extent that an additional showing of basis may be necessary, Plaintiff has sufficiently pleaded the financial conflict of interest he believes influenced his benefits determination.

First, Plaintiff can establish the existence of a conflict of interest as contemplated by *Glenn*. The Plan invests significant decision-making authority in the Human Resources Committee of AEP's Board of Directors ("the Committee"). (Doc. 21-1 at 23). The Plan defines its "Plan Administrator" as "the individual(s) appointed by the Committee to administer the terms of the Plan." (*Id.* at 25). The default Plan Administrator, in the absence of an appointment by the Committee, is AEP's head of Human Resources. (*Id.*). And that was the case when Plaintiff made his claim; the individual administrating the Plan was AEP's Chief Human Resources Officer. (*Id.* at 8).

Further, the Committee sets the payment amount of severance benefits, which are disbursed from AEP's general assets. (*Id.* at 37). Thus, AEP's directors and officers both determine eligibility and make payment. This is the kind of "dual role" entity that the Court in *Glenn* described as creating a *per se* conflict of interest. *See Jones v. Allen*, 933 F. Supp. 2d 1020, 1024–25 (S.D. Ohio 2013). The Court is therefore within its discretion to permit additional discovery.

Second, bearing in mind the higher bar set by some courts, Plaintiff has offered additional facts which give rise to the inference that a conflict of interest affected the benefits determination. Plaintiff's termination followed shortly after AEP replaced his immediate supervisor. (Doc. 1, ¶ 18; Doc. 4, ¶ 18). Plaintiff claims that this new supervisor announced her intention to "shut down" AEP Charge. (Doc. 1, ¶ 19). This, Plaintiff says, created a "financial conflict of interest"

5

arising out of the desire to wind down AEP Charge without dispensing severance. (Doc. 19 at 6; Doc. 1, ¶¶ 20–28). Particularly, he claims that Defendants retroactively manufactured a good-cause rationale for his termination to avoid paying his $750,000 severance. (Doc. 19 at 6). While Defendants argue that Plaintiff did not properly "identify the substance of the alleged conflict" in his pleadings (Doc. 21 at 7), his clear implication is that AEP was looking to cut costs while winding down a failed venture.

In sum, Plaintiff has "done more than merely allege the presence of [AEP's] conflict of interest or bias." *Duncan v. Minn. Life Ins. Co.*, No. 3:17-cv-00025, 2018 WL 306609, at *3 (Jan. 5, 2018). Accordingly, Plaintiff's Motion for Discovery is **GRANTED** with respect to discovery regarding AEP's conflict of interest or bias.

### C. Interference Claim

Plaintiff also alleges an interference claim under Section 510 of ERISA. (Doc. 1, ¶¶ 36–43). "To state a prima facie case for interference under ERISA, a plaintiff must show: (1) prohibited employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." *Bailey v. U.S. Enrichment Corp.*, 530 F. App'x 471, 477 (6th Cir. 2013) (internal quotation marks omitted) (quoting *Clark v. Walgreen Co.*, 424 Fed. App'x 467, 474 (6th Cir. 2011). Because an employer's motivation is relevant to an interference claim, Plaintiff "must demonstrate . . . a specific intent to violate ERISA through either direct or circumstantial evidence." *Schweitzer v. Teamster Local 100*, 413 F.3d 533, 537 (6th Cir. 2005).

As described above, Plaintiff's theory of bias with respect to his benefits claim is that AEP was motivated to deny his severance benefits because of its financial interest in winding down AEP Charge at minimal cost. Evidence supporting this theory is thus likely to overlap with

6

evidence supporting the alleged intent to interfere with his severance. Said differently, giving Plaintiff access to limited discovery on bias should sufficiently address the core concerns of his unlawful interference claim—that Defendants violated ERISA to wind down AEP Charge without having to pay Plaintiff's severance. To the extent Plaintiff's Motion for Discovery may seek additional discovery on the interference claim beyond that, the Motion is **DENIED without prejudice**. Should Plaintiff's interference claim survive the motion to dismiss pending before the District Judge—and should the initial discovery permitted by this Order suggest that additional discovery is necessary—the Court may then reconsider a motion for discovery on this issue.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Discovery (Doc. 19) is **GRANTED IN PART AND DENIED IN PART**. The parties are **ORDERED** to meet and confer and submit a proposed scheduling order within seven days of this Order.

IT IS SO ORDERED.


Date: April 20, 2022                                /s/ Kimberly A. Jolson
                                                    Kimberly A. Jolson
                                                    United States Magistrate Judge